UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

| | |
|---|---|
| CLASS RACING STABLE, LLC<br>    Plaintiff,<br><br>V.<br><br>BREEDERS' CUP LIMITED,<br>    Defendant. | CIVIL ACTION NO. 5:16-200-KKC<br><br><br>**OPINION AND ORDER** |

    This matter is before the Court on the motion to dismiss filed by the defendant Breeders' Cup Limited (DE 4). Because the plaintiff Class Racing Stable, LLC cannot prove that its reliance on the representation alleged in this action was reasonable, the Court will dismiss Class Racing's promissory estoppel and misrepresentation claims. The Court will, however, permit Class Racing's negligence claim to continue.

    Class Racing owns the thoroughbred race horse Holy Lute. Breeders' Cup operates the Breeders' Cup World Championships, which is an annual event consisting of two days of thoroughbred horse racing held at a different host track each year. According to Class Racing, the annual Breeders' Cup is the "richest day of racing in North America," with purses totaling nearly $25 million. In 2015, the Breeders' Cup was held at Keeneland race course in Lexington, Kentucky on October 30 and 31.

    Some races during the Breeders' Cup are run on dirt; others are run on turf. The 2015 Breeders' Cup included two races that are relevant to this case: the Turf Sprint (which was run on turf) and the Sprint (which was run on dirt). Holy Lute is a turf racer. Class Racing states that in the 10 races run by Holy Lute prior to the Breeders' Cup, Holy Lute ran on turf in eight of those and finished first or second in six of those turf races. In contrast, he finished poorly in the two dirt races.

Class Racing alleges that, on October 18, 2015 Holy Lute's trainer, James Cassidy, called the director of racing for Breeders' Cup, Josh Christian, and instructed Christian to pre-enter Holy Lute in the Turf Sprint. Class Racing alleges that, in the phone called, Christian confirmed to Cassidy that Holy Lute was pre-entered in the 2015 Turf Sprint. It further alleges that, relying on Christian's representation, on October 19, Class Racing flew Holy Lute from California to Kentucky to train at Keeneland in preparation for the Turf Sprint.

On October 20, however, Breeders' Cup published the official pre-entries for the 2015 Breeders' Cup races and Holy Lute was listed as being pre-entered in the Sprint (dirt race) and not the Turf Sprint. Class Racing alleges that in a conference call on October 22 Breeders' Cup representatives informed Class Racing that they would put Holy Lute on the "also eligible" list for the Turf Sprint, which meant that Holy Lute would be entered in the race only if seven of the entered horses scratched. Those scratches did not occur and, thus, Holy Lute did not run in the Turf Sprint. Class Racing explains that it did not run Holy Lute in the Sprint because the horse is not a dirt runner but is instead a turf sprinting specialist. Accordingly, Class Racing flew Holy Lute back to California.

In its complaint Class Racing asserts claims for negligence, "detrimental reliance," and misrepresentation against Breeders' Cup. There is no cause of action for "detrimental reliance." For this claim, Class Racing asserts that it was damaged by its detrimental reliance on Christian's alleged verbal confirmation that Holy Lute was pre-entered in the Turf Sprint. (DE 1-1, Complaint ¶¶ 63-65.) These are elements of a claim for promissory estoppel. *See, e.g., Fletcher v. Branch Banking & Trust Corp.*, No. CIV.A.3:04CV-573-H, 2007 WL 2792186, at *2 (W.D. Ky. Sept. 21, 2007). Thus, in its motion to dismiss, Breeders' Cup construes the "detrimental reliance" claim as a claim for promissory estoppel. In its response, Class Racing does the same. (DE 5, Response at 6.) Accordingly, the Court construes the "detrimental reliance" claim asserted in the complaint to be a claim for promissory estoppel.

2

The promissory estoppel and misrepresentation claims must be dismissed. As to the misrepresentation claim, Class Racing does not make clear whether it asserts negligent or intentional misrepresentation. Regardless, both claims require that any reliance on the false representation be "reasonable." *Buckman v. NAU Country Ins. Co.*, No. 3:14-CV-00921-CRS, 2016 WL 1090637, at *2 (W.D. Ky. Mar. 18, 2016) (citing *Presnell Const. Managers, Inc. v. EH Const., LLC.*, 134 S.W.3d 575, 580 (Ky.2004). *See also Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009). The same is true for a promissory estoppel claim. *See, e.g., Fletcher*, 2007 WL 2792186, at *2

Class Racing asserts that it relied on Christian's assurance that Holy Lute was pre-entered in the Turf Sprint and that it then incurred the expense of flying Holy Lute to Kentucky for the race. As Class Racing itself explains in its response to the motion to dismiss, however, fact that a horse is *pre-entered* in a race does not mean the horse will necessarily run in the race. Instead, only certain horses have the credentials that make them automatically qualified to run in a race upon pre-entry and there is no dispute that Holy Lute did not have those credentials.

Races may be oversubscribed, meaning that more horses pre-enter than there are available racing positions. Where a race is oversubscribed, a panel of racing experts ranks the horses that do not automatically qualify for entry in order of preference and those horses are entered in the race in that order until all available racing positions are filled. (DE 6, Response at 4.) The parties agree that 20 horses were pre-entered for the Turf Sprint. There were only 14 post positions. The final field for the race was not established until October 26.

The Court assumes for purposes of this motion that Christian did confirm to Cassidy on October 18 that Holy Lute was pre-entered in the Turf Sprint. That was no assurance that Holy Lute would actually be entered in the race. Thus, it was not reasonable for Class Racing

3

to rely on that assurance in deciding to fly Holy Lute to Kentucky for the race. Accordingly, the promissory estoppel and misrepresentation claims must be dismissed.

As to Class Racing's negligence claim, it seeks two kinds of damages. First, it seeks damages equal to the amount of the purse it would have been entitled to had Holy Lute been entered in the Turf Sprint. These damages are remote, uncertain and speculative and, thus, not recoverable. *Schork v. Huber*, 648 S.W.2d 861, 863 (Ky. 1983). Class Racing asserts that, if Holy Lute had run in the Turf Sprint, Class Racing would have been entitled to a share of the Turf Sprint's $1,000,000 purse. According to Class Racing, only the top five horses would have been entitled to a share of the purse. There is simply no evidence that could be presented to this Court or to a jury that would permit a finding that Holy Lute or any other horse would have finished in the top five.

Class Racing asserts that such evidence consists of the fact that Holy Lute beat the thoroughbred Green Mask in a prior race and Green Mask came in third in the 2015 Turf Sprint. Damages must always be proven with reasonable certainty. *Pauline's Chicken Villa, Inc. v. KFC Corp.,* 701 S.W.2d 399, 401–02 (Ky.1985).  No jury could find that Holy Lute was reasonably certain to beat Green Mask in the Turf Sprint simply because he did so in a prior race. "[T]here is no certainty in horse racing . . . No one is certain to win today simply because he won before. A win yesterday doesn't promise another today or tomorrow." *Funny Cide Ventures, LLC v. Miami Herald Pub. Co.*, 955 So. 2d 1241, 1247 (Fla. Dist. Ct. App. 2007).

The second kind of damages that Class Racing seeks is the amount that Holy Lute's value would have increased had he simply run in the Turf Sprint. In its complaint, Class Racing states that it seeks "[a]n amount to compensate Class Racing for the lost increase in residual value resulting from not being able to participate in the in the 2015 Breeders' Cup."

4

(DE 1-1, Complaint, Prayer for Relief.). In its response, Class Racing asserts that "even if a horse only runs in the race and is unplaced . . . [t]he value of Holy Lute could increase." (DE 6, Response at 11-12.)  Breeders' Cup does not address this category of damages in its motion to dismiss.  And the Court cannot find based on the motion to dismiss that there is no evidence upon which a jury could determine that Holy Lute's value would have increased by simply running in the Turf Sprint.  This category of damages does not depend upon a finding that Holy Lute would finish in the top five. Instead, it depends upon evidence that a horse's value increases simply as a result of having run in a particular race.

Breeders' Cup argues that, even if it had pre-entered Holy Lute in the Turf Sprint, its panel of experts had to select him for entry and he had to be healthy and ready to run on race day. Thus, there was no guarantee that Holy Lute would have run in the Turf Sprint. Nevertheless, the Court cannot find that there is *no* evidence that Class Racing could submit to a jury that would permit a finding that Holy Lute would likely have been entered in the race and would likely have been healthy on race day.

Breeders' Cup argues that it had no duty to Class Racing to pre-enter Holy Lute in the Turf Sprint until Class Racing paid a pre-entry fee, which it alleges Class Racing never did. Breeders' Cup argues that, without the entry fee, no contract between the parties was formed. This may be true but Class Racing asserts negligence against Breeders' Cup, not breach of contract. It also asserts that Christian confirmed on the phone call with Cassidy that Breeders' Cup would enter Holy Lute in the Turf Sprint and that Breeders' Cup never demanded payment of the entry fee before incorrectly pre-entering Holy Lute in the Sprint. It further alleges that it is customary to pre-enter horses in a stakes race without the entry fee being paid. These allegations are at least sufficient to support a claim that Breeders' Cup had a duty to enter Holy Lute in the Turf Sprint after Cassidy's phone call with Christian.

Finally, in its reply brief, Breeders' Cup argues that the Kentucky Horse Racing Commission has exclusive jurisdiction over disputes related to horse racing. Breeders' Cup does not make this argument in its motion but in its reply brief. Thus, Class Racing has not had an opportunity to respond to it. The Court declines to consider the argument on these pleadings. *See Scottsdale Ins. Co. v. Flowers,* 513 F.3d 546, 553 (6th Cir. 2008) (stating "we have found issues to be waived when they are raised for the first time in motions requesting reconsideration or in replies to responses.")

Breeders' Cup may reassert this argument in a future motion. In support of its argument, Breeders' Cup cites *White v. Turfway Park Racing Ass'n*, 718 F. Supp. 615 (E.D. Ky. 1989). In that case, the plaintiffs were bettors who had picked five of the six horses in a Pick Six bet. In order to win a Pick Six, the bettor must pick the winner of six consecutive races. The bettors in *White* picked the winner in five of the six races but picked the second-place finisher in the sixth race. They asserted that the race track should not have permitted the winner of the sixth race to enter the race under the Rules of Racing established by the Kentucky State Racing Commission. The bettors asserted negligence and fraud claims against the track.

The court dismissed the claim on summary judgment noting that the bettors were essentially asking the court to determine that the winner of the sixth race was ineligible and that the second-place finisher – the horse they bet on – should have been declared the winner. *Id*. at 618. The court noted that, under the Rules of Racing, the stewards of the Kentucky Racing Commission declare the winners of a horse race. *Id*. Thus, the race track was not the proper defendant. *Id*. at 619. Further, the Rules of Racing specifically denied bettors the standing to challenge the steward's determination as to race winners. *Id*. at 620. Finally, the court determined that it was not the appropriate forum for adjudicating alleged

violations of the Kentucky Rules of Racing, noting that the state had designated the Commission as the entity responsible for such decisions. *Id*. at 621.

The Court notes that, while in *White*, the bettors alleged a violation of the Rules of Racing, Class Racing does not appear to assert that Breeders' Cup violated a Rule of Racing. Instead, it appears to assert that Breeders' Cup negligently failed to follow its own rules. As discussed, however, the Court declines to address in this opinion whether the Kentucky Horse Racing Commission is the exclusive arbiter of the negligence claim at issue but will give the parties an opportunity to fully brief the issue consistent with the Federal Rules of Civil Procedure and the Local Rules.

For all these reasons, the Court hereby ORDERS as follows:

1) Breeders' Cup's motion to dismiss (DE 4) is GRANTED in part and DENIED in part as follows:

    a) the motion is GRANTED as to Class Racing's misrepresentation and promissory estoppel claims and those claims are DISMISSED; and

    b) the motion is DENIED as to Class Racing's negligence claim.

Dated February 10, 2017.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY