UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CLASS RACING STABLE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 16-200-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| BREEDERS' CUP, LIMITED, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff Class Racing Stable, LLC's motion to reconsider [Record No. 83] the Court's Memorandum Opinion and Order entered on February 10, 2017 [Record No. 9]. The motion is filed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

Class Racing's primary contention is that reconsideration is appropriate because the Court's prior Memorandum Opinion and Order was rendered before the production of an e-mail and depositions occurred. Thus, new evidence is now available that would show its reliance was reasonable. [Record No. 83, p. 6] Additionally, Class Racing argues that its motion for reconsideration should be granted to correct a clear error or prevent manifest injustice because reliance on the statement made by Josh Christian was "entirely reasonable." *Id*.

This Court has the inherent authority under Federal Rule of Civil Procedure 54(b) to reconsider interlocutory orders and re-open any part of a case prior to the entry of final

-1-

judgment. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *Mallory*, 922 F.2d at 1282. Rule 54(b) states, in relevant part:

> any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Generally, reconsideration of an interlocutory order is appropriate "when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959.

The plaintiff's first argument is that new evidence has been produced during discovery that shows Class Racing reasonably relied upon Josh Christian's statement that Holy Lute had been pre-entered in the Turf Sprint. This argument fails for several reasons. First, this argument fails to take into consideration the fact that, when the Court dismissed Class Racing's promissory estoppel and negligent misrepresentation claims in February 2017, it assumed for purposes of the motion that "Christian did confirm to Cassidy on October 18 that Holy Lute was pre-entered in the Turf Sprint." [Record No. 9, p. 3] Thus, there was no dispute about whether Christian made a statement about the horse's status as pre-entered. Second, the "new evidence" that has been presented does not make it any more reasonable for Class Racing to have relied on Christian's statements. Christian did not have the authority to select the horses that would run in the race, a fact which Class Racing knew. *See* Record No. 97-1, pp. 8-9, lines 10-5; 97-1, p. 12, lines 3-16; p. 13, lines 23-25. Instead, the selection procedure stated, in relevant part:

> [i]n the case of an oversubscribed fourteen or twelve horse field, the first horse(s) selected will be the winner(s) of Breeders' Cup Challenge races in the corresponding Breeders' Cup division. If there are less than seven Challenge winners, the next horses will be ranked at pre-entry based on the total number

> of Graded Stakes points they have collected during the year until a maximum of seven or six horses have been ranked based on Breeders' Cup Challenge races and Graded Stakes Points. All horses will need to accumulate a minimum of six (6) points in American and/or Canadian Graded Stakes races to be considered to receive an automatic selection on points in any Championship race with the exception of the four Juvenile races.
>
> The horses remaining after the first seven or six (or all Challenge winners, whichever is greater) in oversubscribed fourteen or twelve horse fields at the time of pre-entry will be ranked in order of preference by the Panel. The Panel will be free to establish its own criteria for ranking so that high-quality horses of demonstrated ability will have the opportunity to participate in Championship races regardless of earlier participation in graded events.

[Record No. 4-2, p. 34]

While Class Racing argues that the Court failed to take into consideration the point system used by Breeders' Cup, it is actually Class Racing that fails to adequately understand the selection procedure. Holy Lute did not accumulate six points, a minimum to be considered to receive an automatic selection into the race on points. Thus, Holy Lute needed to be selected by the Panel to fill one of the remaining slots of the oversubscribed fourteen-horse field. The Panel would rank in order of preference the horses which would make up the remaining spots. And importantly, the Panel was free to establish its own criteria for ranking. As several Panel members discussed in their depositions, the points a horse accumulated are no longer the sole deciding factor for selection of horses to fill the remaining spots. Instead, point totals become just one of many factors that the Panel takes into consideration when selecting the field. *See* Record Nos. 97-3, p. 5, lines 8-18; 97-4, p. 5, lines 1-20; 97-5, p. 7, lines 5-15. Therefore, the fact that Holy Lute had more points than the other horses that ran in the race did not mean that Holy Lute would have been selected over them.

Class Racing goes on to argue that an e-mail sent from Ciaran Kennelly on the day of the call (which allegedly shows Christian knew Holy Lute would be entered in the race at the

time of the call) is new evidence warranting reconsideration of the Court's prior order. Class Racing's reliance on this e-mail is flawed for two reasons. First, James Cassidy placed the call to Christian on Sunday, October 18, 2015 in the morning hours. *See* Record No. 83-1, p. 13, lines 17-25; p. 19, lines 1-4. The e-mail which Class Racing alleges proves Christian knew Holy Lute would be entered on the body of the race was not sent until the late afternoon of October 18, 2015. *See* Record No. 83-1, p. 1 ("Sent: Sunday, October 18, 2015 4:34 PM"). Thus, Christian did not receive the e-mail before the call and could not have looked at the e-mail during the call.

Second, Class Racing's argument that the e-mail list is probative of which horses will be selected by the Panel for the race is again premised on how many points Holy Lute accumulated and its NARC rating. As discussed previously, points are only one factor the Panel takes into consideration when selecting the remaining horses to fill the field. Additionally, the NARC rating is another tool the Panel may use when deciding the horses to select when filling the field. *See* Record Nos. 98-5, pp. 2-3, lines 25-2; 98-6, p. 4, lines 3-11; 98-8, pp. 2-3, lines 23-10. This means that simply being placed on the list of probable starters in the 11th position does not equate to Holy Lute being selected by the Panel to run in that spot.

In summary, Class Racing has come forward with no new evidence that would alter the Court's prior conclusion that Class Racing's reliance on Christian's statement was not reasonable. Where a party simply disagrees with the district court's conclusions, the appropriate vehicle for relief is an appeal, not a motion to alter or amend a judgment. *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (motion

to alter or amend judgment is not vehicle for obtaining post-judgment re-argument on issues already decided). Accordingly, it is hereby

**ORDERED** that Plaintiff Class Racing's motion to reconsider [Record No. 83] is **DENIED**.

This 27th day of April, 2018.

Signed By:
*Danny C. Reeves* DCR
United States District Judge